THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

FILED
CLERK, U.S DISTRICT COURT
JUL - 2 2001
7-2-01
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

ENTERED
CLERK, U.S. DISTRICT COURT
JUL - 3 2001
7-3-01
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HENDRICKSON,<br><br>Plaintiff,<br><br>v.<br><br>EBAY INC., LUCKYBOY ENTERTAINMENT, STEVEN REILLY, and DOES 1 through X,<br><br>Defendants.<br><br>and related cases | Case No. CV 01-0495 RJK (RNBx)<br><br>Consolidated with Case Nos.<br>CV 01-3412 RJK and<br>CV 01-3412 RJK<br><br>**ORDER RE DEFENDANTS EBAY INC., MARGARET C. WHITMAN AND MICHAEL RICHTER'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, MOTION FOR PARTIAL SUMMARY JUDGMENT** |

The Court heard Defendants eBay Inc., Margaret Whitman and Michael Richter's (collectively, the "eBay Defendants") motion for summary judgment or partial summary judgment came (the "Motion") on June 25, 2001. After considering the papers submitted by the parties, the case file and argument of counsel, the Court GRANTS the Motion, in part.

## BACKGROUND

eBay provides an Internet website service where over 25 million buyers and sellers of consumer goods and services have come together to buy and sell items

1 through either an auction or a fixed-price format. eBay's web site allows sellers to
2 post listings containing descriptions of items they wish to offer for sale; and it
3 allows buyers to bid for items they wish to buy. People looking to buy items can
4 either browse through eBay's 4,700 categories of goods and services or search for
5 items by typing words into eBay's search engine. Every day, eBay users place on
6 average over one million new listings on eBay's web site. At any given time,
7 there are over six million listings on the web site.

8     eBay has limited involvement in the sale transactions. At the end of the
9 bidding period, eBay's system automatically sends the high bidder and seller an e-
10 mail identifying each other as such. Thereafter, buyers and sellers deal directly
11 with each other to finalize the transaction. eBay has no knowledge of whether a
12 sale is actually completed. If an item is sold, it passes from the seller directly to
13 the buyer without eBay's involvement.

14     On or about December 20, 2000, eBay received a "cease and desist" letter
15 dated December 14, 2000 from Plaintiff Robert Hendrickson. The letter advised
16 eBay that Plaintiff dba Tobann International Pictures is the copyright owner of the
17 documentary "Manson." The letter also stated that pirated copies of "Manson" in
18 digital video disk ("DVD") format were being offered for sale on eBay. However,
19 the letter did not explain which copies of "Manson" in DVD format were
20 infringing copies; nor did it identify Plaintiff's copyright interest. The letter
21 demanded that eBay cease and desist "from any and all further conduct considered
22 an infringement(s) of [Plaintiff's] right" or else face prosecution "to the fullest
23 extend provided by law." (Richter Decl., Ex. C.)

24     After receiving this letter, eBay sent Plaintiff e-mails asking for more
25 detailed information concerning Plaintiff's copyright and the alleged infringing
26 items. eBay advised Plaintiff that he needed to submit proper notice under the
27 Digital Millennium Copyright Act ("DMCA"). eBay explained that proper notice
28 included, among other things, the identification of the unauthorized copies by the

exact item numbers and a statement under penalty of perjury that Plaintiff owns the copyright to "Manson." eBay also encouraged Plaintiff to join its Verified Rights Owner ("VeRO") program and asked Plaintiff to fill out and submit eBay's Notice of Infringement form.

Plaintiff refused to join eBay's VeRO program and refused to fill out eBay's Notice of Infringement form. At some point, Plaintiff sent eBay the names of a few eBay sellers who were selling counterfeit copies of "Manson." However, he never gave eBay the specific item numbers that eBay sought.

On January 17, 2001, Plaintiff filed the first of three lawsuits against eBay. In CV 01-0495 ("Case No. 1"), Plaintiff sued eBay and two eBay sellers ("Luckyboy" and "Reilly"), asserting a claim for copyright infringement. The Complaint in Case No. 1 alleges, among other things, that eBay is liable for the sale of unauthorized copies of the film "Manson" by users on eBay's web site.

On February 12, 2001, Plaintiff filed the second lawsuit. In CV 01-1371 ("Case No. 2"), Plaintiff sued eBay, David Durham (another third party seller) and Margaret C. Whitman ("Whitman"), eBay's President and CEO. In this action, Plaintiff alleges that eBay and Whitman are liable for copyright infringement because they allowed Defendant Durham to sell unauthorized copies of the film "Manson" on or after January 17, 2001, the date Plaintiff filed Case No. 1.

On April 13, 2001, Plaintiff filed his third lawsuit against eBay. In CV 01-3412 ("Case No. 3"), Plaintiff added several other defendants, including eBay's Senior Intellectual Property Counsel, Michael Richter ("Richter"). Plaintiff alleges, among other things, that eBay and Richter are liable for copyright infringement because they wrongfully continued to allow the sale of unauthorized copies of the firm "Manson" by eBay users after February 25, 2001, the date Plaintiff commenced Case No. 2. In addition, Plaintiff asserts against eBay and Richter a Lanham Act claim and a state claim for tortious interference with prospective economic advantage.

On March 19, 2001, Plaintiff filed a motion for preliminary injunction in Case No. 1. On April 30, 2001, the Court denied Plaintiff's motion. The Court signed eBay's proposed order denying the motion for preliminary injunction. The order states, in pertinent part:

> <u>Based on the Court's review of the evidence submitted by the parties in connection with this motion</u>, the Court finds that eBay's alleged conduct is governed by the safe harbor provision of the [DMCA] (17 U.S.C. § 152, *et seq.*). eBay is an online service provider, as defined under 17 U.S.C. § 512(k)(1)(B), and qualifies for protection from liability under Section 512(c) of the DMCA. The Court further finds that Hendrickson failed to provide eBay with effective notification of claimed infringement under Section 512(c)(3) of the DMCA.

May 7, 2001 Order at 2 (emphasis added).

On April 30, 2001, the Court also granted eBay's motion to consolidate the three actions for all purposes. On May 31, 2001, the eBay Defendants filed the present motion for summary judgment.[1] On June 11, 2001, Plaintiff filed an opposition. On June 18, 2001, the eBay Defendants filed their reply. On June 25, 2001, the Court took the Motion under submission.

## DISCUSSION

### I. PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY

Throughout the Opposition, Plaintiff contends that the Court should decline to decide the Motion until he has taken additional discovery. He complains that he has not taken depositions, particularly the deposition of Richter. Nowhere in the Opposition does Plaintiff ask the Court to deny the motion or continue the

---

[1] For purposes of the Motion, the eBay Defendants do not challenge Plaintiff's claim that (1) he holds the copyright to the film "Manson"; (2) he has a protectable trade dress; or (3) third party sellers infringed Plaintiff's copyright or trade dress.

4

hearing pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Nor does Plaintiff's declaration make a showing as to why he "cannot for reasons stated present by affidavit facts essential to justify [his] opposition." Fed. R. Civ. P. 56(f).

Instead, Plaintiff requests that the Court allow him to cross-examine Richter pursuant to Local Rule 7.5.4. He states that a cross-examination of Richter on matters relating to the contents of his supporting declaration would demonstrate that genuine issues of material facts exist. He also states that he will "waive any and all objections[] regarding . . . the lack of discovery" if the Court will permit the cross-examination of Richter. (Opp. at 19.) Plaintiff warns that the parties "should be prepared for a mini-trial on June 25, 2001." (Opp. at 19.)

Cross-examination of a declarant may be permitted when "an issue of fact is to be determined." Local Rule 7.5.4. On June 19, 2001, the Court issued a minute order denying Plaintiff's request to cross-examine Richter under Local Rule 7.5.4 on the ground that a motion for summary judgment is not a motion where an issue of fact is to be determined.

The Court may construe Plaintiff's request for additional discovery as a Rule 56(f) request for a denial or continuance of the Motion. However, a request under Rule 56(f) must be supported by an affidavit that explains why the party needs additional discovery and how the additional discovery will likely create a genuine issue of material fact. Stearns Airport Equip. Co. v. FMC Corp., 170 F.3d 518, 535 (5th Cir. 1999); see Fed. R. Civ. P. 56(f). Plaintiff did not submit such an affidavit. Even if the Court allows Plaintiff to make his showing through his brief instead of a declaration under oath, Plaintiff has not demonstrated that he is entitled to relief.

First, Plaintiff has failed to identify any specific fact that he believes he could obtain from discovery that will likely create a genuine issue for trial. Second, he has failed to explain his lack of diligence in seeking discovery. It

1  appears that he believes the deposition of a single witness -- Richter -- would be
2  sufficient discovery for purposes of defeating the Motion. However, Plaintiff
3  could have taken Richter's deposition long ago. The record shows Richter was
4  one of Plaintiff's contacts at eBay before Case No.1 was filed in January 2001. In
5  addition, in March 2001, eBay identified Richter as one of its ten witnesses in its
6  initial Rule 26 disclosures (Case No. 1). Moreover, Richter's declaration in
7  support of the Motion is almost identical to the declaration he submitted in April
8  2001 in opposition to Plaintiff's motion for preliminary injunction. Nevertheless,
9  it appears that Plaintiff has taken no steps to notice Richter's deposition.
10 Therefore, Plaintiff is not entitled to additional discovery before the Court reach
11 the merits of the Motion.

## II. SUMMARY JUDGMENT

### A. Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it is relevant to a claim or defense and its existence might affect the suit's outcome. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). A court may not, on a motion for summary judgment, evaluate the credibility of the evidence submitted by the parties. See Leslie v. Grupo ICA, 198 F.3d 1152, 1157-59 (9th Cir. 1999).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990).

To demonstrate that the non-moving party lacks sufficient evidence to entitle it to judgment, the moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence or by any other form of admissible evidence. See Celotex, 477 U.S. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325.

A non-moving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(e) (non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City and County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997), quoting Anderson, 477 U.S. at 249, 252. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In judging evidence at the summary judgment stage, courts must draw all reasonable inferences in favor of the party against whom summary judgment is sought. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Chaffin v. United States, 176 F.3d 1208, 1213 (9th Cir. 1999). However, if no factual showing is made in opposition to a motion for summary judgment, the district court is not required to search the record *sua sponte* for some genuine issue of material fact. It may rely entirely on the evidence designated by the moving party showing that no such triable issue exists. See Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992). While "there is some room for debate as to how 'specific' must be the 'specific facts' that Rule 56(e) requires in a particular case," a nonmovant cannot defeat a Rule 56 motion by merely

1  "replac[ing] conclusory allegations of the complaint . . . with conclusory
2  allegations of an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889
3  (1990).

      **B.**    **Plaintiff's Copyright Infringement Claim**

           **1.**    **eBay's Entitlement to Immunity Under the DMCA**

6  eBay argues that Plaintiff cannot prevail on his copyright claim against it as
7  a matter of law because the Court has already determined that eBay is immune
8  from liability under the DMCA. eBay refers to the Court's order denying
9  Plaintiff's motion for preliminary injunction and contends, without any supporting
10 authority, that the Court's ruling that eBay is entitled to qualified immunity at that
11 stage is dispositive on summary judgment. According to eBay, the Court's prior
12 ruling forecloses Plaintiff from raising any genuine issue of material fact to
13 maintain a viable copyright claim against eBay. eBay's "law of the case"
14 argument has no merit.

15 The Ninth Circuit "ha[s] not departed from the general rule that a decision
16 on a preliminary injunction does not constitute the law of the case and the parties
17 are free to litigate the merits." City of Anaheim, Cal. v. Duncan, 658 F.2d 1326,
18 1328 n.2 (9th Cir. 1981); accord Golden State Transit Corp. v. City of Los
19 Angeles, 754 F.2d 830, 832 n. 3 (9th Cir. 1985), rev'd on other grounds, 475 U.S.
20 608 (1986); see also Wilcox v. United States, 888 F.2d 1111, 1113-14 (6th Cir.
21 1989) ("Because of the lesser burden of proof required to support a motion for
22 preliminary injunction as contrasted with a motion for summary judgment, a trial
23 court's disposition of the substantive issues joined on a motion for extraordinary
24 relief is not dispositive of those substantive issues on the merits"). The Court's
25 findings and conclusions in connection with its denial of the preliminary
26 injunction only demonstrate that the record before the Court at the time showed
27 that eBay was covered by the DMCA's safe harbor provision. The Court did not
28 determine, under the summary judgment standard, whether the undisputed facts

show the absence of genuine issues for trial. Nor was the Court required at the preliminary injunction stage to view the facts and draw inferences in the light most favorable to Plaintiff.

Moreover, the motion for preliminary injunction only concerned the record in Case No. 1. It appears that these consolidated cases involve slightly different facts over slightly different time frames. To the extent that any of the differences concern facts material to eBay's defense, eBay needs to address these differences. For example, to prevail on summary judgment, eBay has the burden of showing there is no triable issue of fact on its claim that it has met each of the requirements for immunity under the DMCA. See 17 U.S.C. § 512(c); see also ALS Scan, Inc. v. RemarQ Communities, Inc., 239 F.3d 619, 625 (4th Cir. 2001) (Noting that the immunity under the DMCA is "granted only to 'innocent' service providers who can prove they do not have actual or constructive knowledge of the infringement"). On the issue of proper notification, eBay's Uncontroverted Fact No. 8 states that "Prior to filing this action, Hendrickson never provided eBay with sufficient information to enable eBay to determine which copies of 'Manson' were infringing copies and which were not." (eBay's Statement of Facts, No. 8 (emphasis added).) eBay does not explain which "action" it meant to reference -- Case No. 1, Case No. 2 or all three cases. To the extent that Plaintiff attempted to provided some notice over different periods, even if Plaintiff's purported methods of notification are deficient under the DMCA, eBay's uncontroverted facts should identify more clearly what occurred when.[2]

---

[2] The Court notes that eBay's evidence is incomplete. For example, eBay relies on admissions made by Plaintiff in response to requests for admissions. (See, e.g., Kim Decl., Exs. F & G.) Some of the admissions concern documents originally attached to eBay's First Set of Requests for Admissions. (See Kim Decl, Exs. F at 2-3 [definitions].) However, none of the referenced documents are attached to these exhibits.

9

At this time, eBay carries the initial burden of establishing its entitlement to the immunity defense. eBay failed to carry that burden because it relied on the success of its law of the case argument. Because the record suggests that eBay can make a sufficient showing that it is entitled to immunity, the Court denies the motion for summary judgment of the copyright claim without prejudice to its re-filing.

### 2. Richter and Whitman's Liability for Copyright Infringement

Richter and Whitman are sued in their capacity as employees of eBay. Richter and Whitman argue, among other things, that the they cannot be held vicariously liable for copyright infringement where eBay is not liable for infringement under the DMCA. The Court's determination of eBay's immunity defense may dispose of this issue. Instead of addressing the copyright claim piecemeal, the Court declines to address Richter and Whitman's motion at this time.

### C. Plaintiff's Lanham Act Claim Against eBay and Richter

In Case No. 3, Plaintiff alleges that eBay, Richter and over a dozen third party sellers violated his rights under the Lanham Act, 15 U.S.C. § 1125. In the Motion, eBay and Richter complain that the conclusory allegations in the Complaint make it difficult for them to ascertain whether the Lanham Act claims against them are based on vicarious or contributory infringement principles. Therefore, they address both theories of secondary liability on summary judgment, arguing that the undisputed facts show Plaintiff cannot prevail under either theory as a matter of law.[3]

---

[3] Vicarious liability under the Lanham Act requires that "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control

10

eBay and Richter's reliance on the contributory and vicarious liability tests is misplaced. Plaintiff is pursuing "printer-publisher" liability for trademark/trade dress infringement. See Case No. 3 Complaint, ¶¶ 13, 38-39, 86; Opp. at 15; see also 4 McCarthy on Trademarks, § 25:19 (2000) ("liability is imposed on one who 'reproduces or imitates' the trademark on materials (such as labels or advertisements) that are used by a seller in an infringing manner"); Conopco, Inc. v. Rosa Distributors, 967 F. Supp. 1068 (N.D. Ill. 1997) (infringement action against printer of allegedly infringing labels for fabric softener); Century 21 Real Estate Corp. v. R.M. Post, Inc., 8 U.S.P.Q.2d 1614 (N.D. Ill. 1988) (infringement action against publishers of a telephone directory yellow pages advertisement which allegedly contained an unauthorized reference to the "Century 21" mark); see also Polo Fashions, Inc. v. Ontario Printers, Inc., 601 F. Supp. 402 (N.D. Ohio 1984) (owner of trademark brought commercial counterfeiting action against printer); cf. Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 958 (C.D. Cal. 1997), affirmed, 28 F.3d 769 (9th Cir. 1994) (suggesting that an Internet service provider that provides hosts computers for web sites may be held liable for printer-publisher liability under the Lanham Act). Printer-publisher liability is imposed on one who reproduces or publishes an advertisement used by a seller in an infringing manner.

---

over the infringing product." Hard Rock Cafe Licensing Corp., 955 F.2d 1143, 1150 (7th Cir. 1992). In contrast, contributory liability under the Lanham Act generally requires that the plaintiff show the defendant "(1) intentionally induce[d] another to infringe on a trademark or (2) continue[d] to supply a product knowing that the recipient is using the product to engage in trademark infringement." Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264-65 (9th Cir. 1996); accord 4 McCarthy on Trademarks, § 25:17 (2000) ("Liability for trademark infringement . . . may be extended beyond those who actually sell goods with the infringing mark, to include all those contributory infringers who knowingly cooperate in illegal and tortious activity").

Although the Motion cites no authority addressing the printer-publisher liability doctrine, eBay and Richter are aware of the doctrine. In the Motion, they raise an alternative argument for judgment in their favor on the Lanham Act claim. They cite 15 U.S.C. § 1114(2), which limits a plaintiff's remedy to an injunction against the future presentation of the infringing advertisement if the infringer is an "innocent" printer or publisher. See 15 U.S.C. § 1114(2)(B).

eBay and Richter argue that Plaintiff's Lanham Act claim is barred as a matter of law because (1) they qualify as innocent infringers and (2) Plaintiff seeks remedies that are not available to him.[4] eBay and Richter submit Richter's declaration, which states that "eBay and I had no knowledge of any alleged Lanham Act violations relating to Hendrickson and/or 'Manson' until Hendrickson filed his complaint in Case No. 3" because Plaintiff "never advised eBay or any of eBay's employees . . . of any alleged violation of the Lanham Act" before filing suit. (Richter Decl., ¶ 27). eBay and Richter, citing no authority to guide the Court, contend that this evidence sufficiently establishes their "innocence."

15 U.S.C. § 1114(2) provides, in pertinent part:

Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person brining an action under section 1125(a) of this title shall be limited as follows:

. . . .

---

[4] The prayer in the Complaint shows Plaintiff seeks remedies well beyond what is allowable under Section 1114(2). (See Case No. 3 Complaint, ¶ 92 (asking for treble damages and "a permanent injunction enjoining each of the Defendants from engaging in, or facilitating others in the making, false packaging, false advertising, offering, selling and or trading of unauthorized copies of Plaintiff's motion picture entitled 'Manson'").)

12

> (B) Where the infringement or violation complained of is contained <u>in or is part of paid advertising matter in</u> a newspaper, magazine . . . <u>or in an electronic communication</u> as defined in section 2510(12) of Title 18, the remedies of the owner of the right infringed . . . <u>shall be limited to an injunction against the presentation</u> [in] such newspapers, magazines . . . or <u>in future transmissions of such electronic communications</u>. The limitations of this subparagraph <u>shall apply only to innocent infringers and innocent violators.</u>

15 U.S.C. § 1114(2) (emphasis added). A posting on eBay's web site is an "electronic communication" as defined by Section 2510(12). See 18 U.S.C. § 2510(12) (defining "electronic communication" as "any transfer of signs, signals, writing, images, data or intelligence of any nature transmitted . . . by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce"); <u>Gucci America, Inc. v. Hall & Assoc.</u>, 135 F. Supp. 2d 409, 419 n.20 (S.D.N.Y. 2001) (finding the definition of "electronic communication" applies to typical commercial Internet websites).

The Lanham Act does not define the test for "innocent infringer." Few published cases address the standard for determining whether a printer-publisher constitutes an innocent infringer under Section 1114(2). None of those cases involve an Internet service provider such as eBay.

In <u>Polo Fashions v. Ontario Printers</u>, 601 F. Supp. 402 (N.D. Ohio 1984), the court articulated an "objectively reasonable business person" test for innocent infringer:

> When a person, such as a manufacturer or a printer, is approached to make a product for a famous manufacturer, that business person has an affirmative duty to determine the legitimacy of the person placing the order. That person must make reasonable inquiry, and this will be determined from all of the facts and circumstances.

13

Id. at 403.

In 1989, Congress amended the innocent printer provision. It "expanded the category of innocent printers and publishers to include broadcasters [of electronic media] that carry advertisements [containing] infringing trademarks" and extended the limitation on remedies. 4 McCarthy on Trademarks, § 25:29 (2000). Legislative history indicates that the term "innocent" is intended to incorporate the constitutional standard of "actual malice" applicable in defamation cases such as New York Times v. Sullivan, 376 U.S. 254 (1964). See id.

> However, the defamation test is not easily transferred to the state of mind of a publisher or broadcaster. This would mean that such a publisher or broadcaster is not 'innocent' only if it knew that the advertisement was false or infringing or proceeded to publish the advertisement with "reckless disregard" as to whether it was false or infringing or not.

Id. McCarthy on Trademarks further notes that Polo Fashions's "affirmative duty" to investigate standard "cannot be applied after the 1989 changes to the Lanham Act." Id.

The only published case after the 1989 amendment is Conopco, Inc. v. Rosa Distributors, 967 F. Supp. 1068 (N.D. Ill. 1997). In this case, the plaintiff sued the printer of infringing labels for a fabric softener. The record showed that the defendant's employees admitted they were familiar with the famous "Snuggle" fabric softener trademark and trade dress when they printed labels for a fabric softener called "Nuggle." 967 F. Supp. at 1071. The "Nuggle" labels were substantially similar to "Snuggle" labels. Id. Without discussing the legislative history of the amendment to 15 U.S.C. § 1114(2), the court applied an "objectively reasonable" test on summary judgment similar to the one articulated in Polo Fashions. "While a printer may not always be required to investigate a customer's authorization to print product labels, whether [the defendant's] conduct here was

14

objectively reasonable is a disputed issue of fact." Id. The test is whether the infringer's conduct was objectively reasonable at the time it printed the infringing material. Id.

"Given the legislative history and the stringent requirements under the actual malice standard, it is doubtful that the objectively reasonable standard [adopted by Polo Fashions and Conopco] is the appropriate standard. NBA Properties v. Untertainment Records LLC, 1999 WL 335147, *15 (S.D.N.Y. May 26, 1999). The Court need not decide which test applies. Under either standard, the undisputed facts show eBay is an "innocent infringer"

If the objectively reasonable standard applies, the test should not be whether eBay acted like a reasonable *traditional* printer/publisher, but whether eBay acted like a reasonable Internet service provider. In applying this test, the Court takes into account the following: (1) the vast amount of information posted on eBay's web site on a daily basis; (2) the difficulties involved in monitoring all the postings to determine whether intellectual property rights of third parties have been infringed by other third parties; (3) no law currently imposes an affirmative duty on companies such as eBay to engage in such monitoring; and (4) congressional actions in recent years (in the copyright arena) reflect an intent to encourage Internet service providers and rights owners to cooperate and detect infringements and protect an Internet service provider from suit when it lacks notice of infringing activity. See, e.g., eBay's Appendix of Authorities in Opp. to Motion to Preliminary Injunction, Ex. C (Senate Report 105-190 at 40-41 (105th Congress, 2d Session 1998) (on the passage of the DMCA).

The undisputed facts show that eBay's Internet auction web site allows buyers and sellers to deal with each other freely with minimal contact from eBay. Unlike the traditional printer/publishers at issue in Polo Fashions or Conopco, eBay does not actually create the infringing "product" or advertisement. eBay does not create, review, approve or edit the content of any advertisement provided

by the millions of sellers who use eBay's web site. (Richter Decl., ¶ 4.) The sellers create their own electronic classified advertisement and transmit them to eBay's host computer server. (Id. at ¶¶ 2-4.) As long as sellers pay the required fees, sellers may post their listings at any time without intervention by eBay. (See id.) Every day, over one million new listings are "published" on eBay's web site. (Id. at ¶ 2.) Under the circumstances, a company such as eBay cannot be expected to investigate the legitimacy of any particular advertisement published on its web site unless it has notice of a potential trade dress infringement (e.g., someone alerts eBay of such infringement).

The record shows that Plaintiff first advised eBay of alleged Lanham Act violations in April 2001 around the time he filed the complaint in Case No. 3. Plaintiff began complaining to eBay in December 2000. During the next three or four months, Plaintiff exchanged numerous communications with eBay and filed two lawsuits against eBay. All of Plaintiff's complaints concerned claims of copyright violation.

In April 2001, Plaintiff advised eBay for the first time that he owns a famous trade dress. By a letter dated April 8, 2001, Plaintiff informed eBay that eBay sellers' "Manson" DVD advertisements contain "trade dress that is confusingly similar to the official trade dress of my now famous VHS 'MANSON' trade dress." (Opp., Ex. F.) Enclosed with the letter were (1) a copy of an advertisement from eBay's web site displaying an official "Manson" videocassette with the alleged famous trade dress and (2) a copy of two eBay sellers' listings of counterfeit "Manson" DVDs displaying packaging that looks similar to the packaging for the authorized "Manson" videocassette. (See id.) Plaintiff mailed that letter on April 9, 2001. (Id.) It is unclear when eBay received the letter. However, it is clear that Plaintiff filed Case No. 3 just four days after mailing the letter. eBay never had an opportunity to address Plaintiff's trade dress complaint before it was slapped with a lawsuit.

16

Based on this record, eBay's failure to delist any of the allegedly infringing advertisements before Plaintiff served eBay with the Case No. 3 Complaint was objectively reasonable. Plaintiff submits no evidence that shows eBay allowed the "publication" of the advertisements when it knew or should have known that Plaintiff owned an allegedly famous trade dress and third party sellers violated his trade dress rights.

If the actual malice test applies, Plaintiff would have to prove that eBay acted either (1) with knowledge that the advertisements identified in the Complaint infringed Plaintiff's Lanham Act rights or (2) with reckless disregard as to whether those advertisements infringed Plaintiff's rights. Plaintiff clearly has no evidence that even suggests eBay actually knew that the complained of advertisements were infringing on his trade dress and either "allowed" their publication or refused to delist the advertisements with reckless disregard for Plaintiff's rights.

Accordingly, even if Plaintiff were to establish infringement, the undisputed facts show eBay would be an innocent infringer within the meaning of 15 U.S.C. § 1114(2). Because Richter's role in this lawsuit is based solely on his actions or inactions as an employee and agent of eBay, the Court holds that eBay's "innocent infringer" status extends to Richter. Consequently, Plaintiff is not entitled to the remedies that he seeks to recover from eBay and Richer under the Lanham Act.

Nevertheless, eBay and Richter are not entitled to judgment on the Lanham Act claim simply because Plaintiff is not entitled to all the remedies that he seeks. If Plaintiff prevails on his claim that eBay "published" infringing material, Plaintiff would be entitled to some relief, namely, an injunction against the presentation of the misleading advertisements in future eBay listings. The Court hereby construes this portion of the Motion to include a motion for summary adjudication on the issue of the applicability of the "innocent infringer" provision. The Court concludes that eBay and Richter are entitled to summary adjudication

in their favor on this issue.

### D. Plaintiff's State Claim for Tortious Interference with Prospective Economic Advantage Against eBay and Richter

In Case No. 3, Plaintiff alleges a state claim for intentional interference with prospective economic advantage. eBay and Richter content that summary judgment is proper for two reasons. First, they argue that Plaintiff's state claim is preempted by the Copyright Act. Second, they argue that the Communications Decency Act ("DCA") creates a federal immunity to any state law claim that would hold eBay or its employee liable for the listings posted on its web site by third parties. Because the Court holds that Plaintiff's tortious interference claim is preempted by the Copyright Act, the Court need not reach the second argument.

Under the Copyright Act, all rights under state law are preempted if they (1) come within the "subject matter of copyright" as defined in Sections 102 and 103 and (2) are "equivalent to any of the exclusive rights within the general scope of copyright" as defined in Section 106 of the Act. 17 U.S.C. § 301. Plaintiff's interference with business advantage claim is based on all of "[t]he aforementioned acts of allowing the infringing activity complained of continue." (Case No. 3 Complaint, ¶ 87 (emphasis added).) All references in the Complaint to eBay and Richter's "continued" violation of Plaintiff's rights relate to his copyright infringement claims. (E.g., id. at ¶ 36 (the "continued Copyright Infringement activities"), ¶ 75 (alleging that he filed Case No. 1 because the copyright violations "continued" and "it became apparent that neither EBAY, nor MICHAEL RICHTER would do anything to stop the subject infringing activity") and ¶¶ 75-78 ( Richter "willfully and callously allowed and directed others to allow such activity to continue to interfere with Plaintiff's rightful business opportunities" after Plaintiff filed the first copyright infringement lawsuit against eBay). Indeed, Plaintiff's tortious interference claim is based on the same allegations of infringement of his rights under the Copyright Act -- the continued

unauthorized distribution of Plaintiff's copyrighted film "Manson."

The Court holds that there is no qualitative difference between Plaintiff's intentional interference with prospective economic advantage claim and his copyright claim. Therefore, the state claim is preempted by the Copyright Act. See Worth v. Universal Pictures, 5 F. Supp. 2d 816, 822 (C.D. Call 1997) (plaintiff's claim of intentional interference with prospective economic advantage based on alleged unauthorized use of screenplay is preempted by the Copyright Act); Trenton v. Infinity Broadcasting Corp., 865 F. Supp. 1416, 1428-29 (C.D. Cal. 1994) (plaintiff's claim for interference with prospective economic advantage essentially "assert a protectable copyright interest" in the radio program format and therefore preempted by the Copyright Act). Accordingly, eBay and Richter are entitled to judgment in their favor on the state tortious interference with business advantage claim.

## DISPOSITION

For all of the foregoing reasons, the Court: (1) DENIES Plaintiff's request for further discovery; (2) DENIES the eBay Defendants' motion for summary judgement of the copyright claim; (3) DENIES eBay and Richter's motion for summary judgment of the Lanham Act claim; (4) GRANTS eBay and Richter's motion for summary adjudication of the application of the Lanham Act "innocent infringer" provision; and (5) GRANTS the eBay Defendants' motion for summary judgment of the state tortious interference with business advantage claim.

IT IS SO ORDERED.

DATED: June 29, 2001.

ROBERT J. KELLEHER
United States District Judge

19