FILED
CLERK, U.S. DISTRICT COURT
JUL 31 2001
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

Priority ___
Send ✓
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HENDRICKSON,<br><br>Plaintiff,<br><br>v.<br><br>EBAY INC., LUCKYBOY ENTERTAINMENT, STEVEN REILLY, and DOES 1 through X,<br><br>Defendants.<br><br>and related cases | Case No. CV 01-0495 RJK (RNBx)<br><br>Consolidated with Case Nos.<br>CV 01-3412 RJK and<br>CV 01-3412 RJK<br><br>**ORDER GRANTING DEFENDANT CORPORATE DUPLICATIONS SOLUTIONS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

On July 30, 2001, the Court heard Defendant Corporate Duplications Solutions, Inc.'s ("CDS") motion to dismiss for lack of personal jurisdiction. After considering the papers submitted by the parties, the case file and oral argument, the Court GRANTS the motion to dismiss.

## I. BACKGROUND

These consolidated actions concern pro se Plaintiff Robert Hendrickson's copyrighted documentary "Manson." Plaintiff alleges that the defendants' reproduction, duplication, sale and/or distribution of pirated copies of "Manson"

1



ENTERED ON ICMS
AUG - 2 2001
CV

in digital video disk ("DVD") format violate his rights under the Copyright Act and the Lanham Act. On January 17, 2001, Plaintiff filed the first of three lawsuits against eBay, Inc. and various defendants. On February 12, 2001, Plaintiff filed the second lawsuit against eBay and additional defendants. On April 13, 2001, Plaintiff filed his third lawsuit against eBay and other defendants, including CDS. On April 30, 2001, the Court consolidated the three related actions.

CDS is a small, privately-owned New Jersey corporation in the business of duplicating and packaging videos and other multimedia materials, including DVDs. (See Chinni Decl., ¶¶ 1, 4.) CDS was founded in 1996 by Anthony J. Chinni, its President and sole shareholder. (Id.) CDS's only office is located in Teterboro, New Jersey. (See id. at ¶ 3.) CDS has no bank accounts in California, nor does it lease or own any property in California. (See id. at ¶ 12.) CDS has no employees or agents residing in California. (See id. at ¶¶ 8, 13.) CDS has never directed advertisements specifically towards residents of California; its advertisements generally target the New York metropolitan area. (See id. at ¶¶ 14-17.) It maintains a non-interactive Internet website at www.cdsdupe.com, which identifies CDS as a New Jersey company and promotes it as "The [New York] Metropolitan area's newest multi-media duplication facility." (Id. at ¶ 18 & Ex. A.)

Since it opened for business in 1996, CDS has made four sales to customers in California. (See id. at ¶ 21.) All of these customers contacted CDS by telephone or mail. One of these customers has an office in New Jersey near CDS's office; and the other three customers were referred to CDS by existing CDS customers. (See id.) Those sales total $6,983.00, which is less than 1/10 of 1 percent of the gross sales earned during the 1996 to the present period of time. (See id.)

1  DVD mastering along with outsourced DVD duplication accounted for only
2  five percent of CDS's sales in 2000. (See id. at ¶ 5.) In 2000, CDS used non-
3  party Infodisc Technologies, Inc. ("Infodisc"), a company with a sales office in
4  Irvine, California, as an outside source for DVD duplication services. (See Park
5  Decl., ¶ 2-3; Chinni Decl., ¶¶ 5, 26.) Although Infodisc maintains an office in
6  Irvine, all duplicating services are performed at its manufacturing site in Taiwan.
7  (See Park Decl., ¶ 2.) All communication between CDS and Infodisc took place
8  via telephone or mail. (See id. ¶ 4.)
9  The only transaction that has a connection with Plaintiff's lawsuit involves
10 CDS's dealings with defendant John Matarazzo dba Beverly Wilshire
11 Filmsworks/Telefilms International ("Matarazzo") and non-party Infodisc.
12 Matarazzo maintains an office in Little Ferry, New Jersey, which is located in the
13 same county as CDS's offices. CDS created for Matazarro a DVD master of a
14 videotape of "Manson." (See id. at ¶¶ 23-25.) This service was performed in
15 New Jersey. (See id. at ¶ 23.) It was CDS's understanding that Matarazzo had the
16 right to reproduce the film. (See id. at ¶ 25.)
17 Initially, CDS and Matarazzo contemplated that CDS would send the master
18 DVD to Infodisc for duplication. (Id. at ¶ 26; see Park Decl., ¶ 3.) On August 25,
19 2000, CDS forwarded to Infodisc's Irvine office 14 DVD masters, including a
20 DVD master of "Manson." (See Supp. Chinni Decl., ¶ 2.) However, because
21 Matarazzo changed his mind and withdrew his duplication order from CDS,
22 Infodisc did not end up performing any services in connection with the "Manson"
23 DVD duplications. (See id. at ¶ 3; Chinni Decl., ¶ 27; Park Decl., ¶ 3.) Infodisc
24 returned to CDS all 14 DVD masters by Federal Express on August 28, 2000.
25 (See Supp. Chinni Decl., ¶ 3 & Ex. B.)
26 In addition to the DVD mastering services, CDS provided Matarazzo with
27 artwork that Matarazzo later used to create covers for the DVDs that he
28 distributed. (See Supp. Chinni Decl., ¶ 7.) One of the counterfeit "Manson"

1  DVDs that Plaintiff acquired contains a cover with artwork created by CDS. (See
2  Opp., Ex. B.) CDS's name and telephone number are listed on the back cover in
3  the following manner: "DVD mastering at Corporate Digital Solutions, 1-888-
4  CDS-DUPE for Beverly Wilshire Filmworks." (Id.) CDS had no involvement
5  with the duplication of the DVD covers that Matarazzo later used to package the
6  allegedly counterfeit "Manson" DVDs. (See id. at ¶¶ 7-8.) CDS also had no
7  involvement with the distribution of the "Manson" DVDs. (See id. at ¶ 8.)
8      DVD billed Matarazzo $1,350 for the services it rendered in connection
9  with the "Manson" DVD title. (See Chinni Decl., ¶ 30.) This bill remains unpaid
10 and outstanding. (See id.)
11     In February 2001, eBay issued a subpoena duces tecum to CDS in the first
12 of the consolidated lawsuits, requesting that CDS produce a copy of all documents
13 in CDS's files relating to the "Manson" film. (See Reply, Ex. 1.) At that time,
14 CDS was not yet a party in any of the lawsuits filed by Plaintiff. One of the
15 documents produced by CDS was a letter dated August 11, 2000, from CDS to
16 Infodisc (the "August 2000 letter"). (See Opp., Ex. A.) This letter confirms that
17 Beverly Wilshire Films (Matarazzo's fictitious business name) had authorized
18 CDS to replicate various films in DVD format, including "Manson," in August
19 2000. The letter also confirms that CDS, in turn, had contracted with Infodisc to
20 perform the actual replication services. Because the letter contains CDS's
21 certification that "Beverly Wilshire Films, Inc." is the sole owner of "Manson,"
22 eBay submitted a copy of the letter in support of its opposition to Plaintiff's
23 motion for a preliminary injunction.
24     On April 13, 2001, the day eBay introduced the August 2000 letter to the
25 record, Plaintiff filed the complaint in the third case and named CDS as a
26 defendant. The jurisdictional allegations in the complaint alleges that CDS, "by
27 their actions elsewhere, have greatly affected Plaintiff and his property,
28 specifically Plaintiff's motion picture entitled "MANSON" that is the subject of

4

1  this action and situated in this judicial district." (Complaint in CV 01-3412, ¶ 7
2  (emphasis added).)  The substantive allegations against CDS concern CDS's
3  relationship with Beverly Wilshire Filmworks and Matarazzo.  The complaint
4  alleges that CDS made unauthorized counterfeit copies of "Manson" knowing that
5  such counterfeit copies would be put into the marketplace.  (See id. at ¶¶ 80, 81,
6  90, 91 & 92.)
7       On June 13, 2001, CDS filed the motion to dismiss pursuant to Federal Rule
8  of Civil Procedure 12(b)(2).  On July 9, 2001, Plaintiff filed an opposition.  On
9  July 16, 2001, CDS filed an reply.

## II. DISCUSSION

### A.    Standard

     In a Rule 12(b)(2) motion to dismiss, the plaintiff has the burden of establishing personal jurisdiction over the defendant. Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995).  The existence of personal jurisdiction is determined at the time the suit commences.  Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987).  When a court rules on the basis of affidavits or affidavits and discovery materials, plaintiff's burden is met with a prima facie showing of personal jurisdiction.  Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986); Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  A prima facie showing is made if Plaintiff's written materials "demonstrate facts which support a finding of jurisdiction." Data Disc., 557 F.2d at 1285.  Uncontroverted allegations in the complaint must be taken as true and "'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor[.]"  AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

     In copyright and trademark cases, such as this one, there is no applicable federal statute governing personal jurisdiction.  Hence, the law of California, the state in which the district court sits, applies.  See Panavision Int'l, L.P. v.

5

Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998) (trademark case); Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993) (copyright case). California's long-arm jurisdiction statute permits courts to exercise in personam jurisdiction to the full extent possible under the Due Process Clause. See Cal. Civ. Proc. Code § 410.10; Ziegler, 64 F.3d at 473. Thus, the relevant inquiry concerns whether the exercise of jurisdiction would comport with the requirements of due process. Due process requires that the non-resident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of air play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

There are two recognized bases for personal jurisdiction over non-resident defendants: general and specific. General jurisdiction exists if the non-resident defendant's contacts with the forum state are continuous and systematic enough to justify the exercise of jurisdiction over the defendant in all matters. See Ziegler, 64 F.3d at 473. Specific jurisdiction exists when the claims against the non-resident defendant "arise out of" or are related to the defendant's activities within the forum state. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 (1984); Panavision, 141 F.3d at 1320.

**B.    Analysis**

**1.    General Jurisdiction**

The Court cannot exercise general jurisdiction over CDS. First, the evidence shows it does not have regular business dealings with California. Second, the evidence shows its contacts with California residents are not substantial, systematic or continuous.

**2.    Specific Jurisdiction**

The Ninth Circuit utilizes a three-part test to determine the propriety of exercising specific jurisdiction:

(1)    the non-resident defendant must perform some act by which he

6

    purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws;

 (2) the plaintiff's claim arise out of or result from the non-resident defendant's forum-related activities; and

 (3) the exercise of jurisdiction must be reasonable.

Panavision, 141 F.3d at 1316. A plaintiff must satisfy all three parts of the test to establish specific personal jurisdiction over a non-resident defendant. McGlinchy v. Shell Chem. Co., 845 F.2d 802, 817-18 n. 10 (9th Cir. 1988). Because the evidence shows Plaintiff cannot satisfy the purposeful availment prong, the Court need not address the second and third prongs of the specific jurisdiction test.

 The "purposeful availment" prong protects a non-resident from being haled into a court solely because of "random, fortuitous or attenuated" contacts with the forum state. Ziegler, 64 F.3d at 473. To pass this part of the test, the plaintiff must show that the defendant "has taken deliberate action" toward the forum state. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). The defendant need not have physical contacts with the forum, so long as his efforts are "purposefully directed" toward forum residents. Id.

 The Ninth Circuit applies different purposeful availment tests to contract and tort cases. See id. For example, in contract disputes, "merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident." Id. However, in tort cases, jurisdiction may attach if the non-resident defendant's out-of-forum conduct is aimed at, and has an effect in, the forum state. Id. This doctrine for tort cases is known as the "effects test." See Panavision, 141 F.3d at 1321; Calder v. Jones, 465 U.S. 783, 789-90 (1984) (establishing an "effects test" for intentional action aimed at the forum state).

 This copyright and trade dress case is more akin to a tort case than a contract case. See Panavision, 141 F.3d at 1321 (holding the district court correctly stated a trademark case is akin to a tort case). Therefore, the effects test

7

1  applies in the purposeful availment analysis.  Under the effects test, purposeful
2  availment may be found where there exists "'(1) intentional actions (2) expressly
3  aimed at the forum state (3) causing harm, the brunt of which is suffered -- and
4  which the defendant knows is likely to be suffered -- and had an effect in the
5  forum state.'"  Id. (quoting Core-Vent Corp. v. Nobel Industries AB, 11 F.3d
6  1482, 1486 (9th Cir. 1993)).

7  Here, Plaintiff contends that the following out-of-state activities, which
8  caused him to suffer harm in California, establishes personal jurisdiction:  (1) the
9  creation of a DVD master of "Manson" and related cover artwork for Matarazzo,
10 which allegedly constitutes violations of Plaintiff's rights under the Copyright Act
11 and the Lanham Act; (2) CDS contemplated that numerous copies of "Manson"
12 DVDs would be made from the master DVD it created; (3) CDS intended for the
13 replication of "Manson" to be made by Infodisc, a company located in Irvine,
14 California; and (4) CDS produced the August 1990 letter to eBay knowing that it
15 could or would be used to affect the outcome of Plaintiff's lawsuit against eBay.
16 (Opp. at 4-5.)  Plaintiff's contention has no merit.

17 First, Plaintiff cannot rely on CDS's production of the August 1990 letter to
18 eBay as a basis for purposeful availment.  CDS produced the document in
19 response to a subpoena issued in the first case Plaintiff filed against eBay.  No
20 authority supports Plaintiff's argument that a non-resident's efforts to fulfil its
21 legal obligations (when compelled by a subpoena) may be considered evidence of
22 intentional involvement in a lawsuit in the forum state.

23 Second, the evidence shows CDS's act of creating the DVD master and
24 cover artwork for Matarazzo, along with CDS's "contemplation" that Matarazzo
25 would make duplicates of the DVD, were not intentional acts aimed at California.
26 See Calder, 465 U.S. at 789-90 (the Court emphasized that "the focal point of both
27 the damaging story and of the harm suffered" was California; the plaintiffs knew
28 the subject of their story (Shirley Jones) was a famous California resident, knew

8

that the subject's television career was centered in California, used California sources for the article and published the article in a national magazine with a large circulation in California); Panavision, 141 F.3d at 1321-22 (the plaintiff "purposefully registered Panavision's trademarks as his domain names on the Internet to force Panavision[, whose principal place of business was in California,] to pay him money"); cf. Terracom v. Valley Nat'l Bank, 49 F.3d 555, 560 ("'[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefuly directed toward the forum State'"). The evidence in this case does not show that CDS knowingly and intentionally aimed at California when it agreed to perform services for Matarazzo.

CDS's supporting declaration shows that Matarazzo maintained an office in New Jersey and CDS treated Matarazzo as a New Jersey client. (See Chinni Decl., ¶ 24 & Ex. C [CDS's invoice for services rendered sent to Matarazzo's attention at Beverly Wilshire Films, Inc. in Little Ferry, New Jersey].) CDS understood that Matarazzo was the rightful owner of the rights to "Manson" at the time it created the DVD master for Matarazzo. (See id. at ¶ 25.) CDS was not aware of Plaintiff's claim of copyright ownership in the "Manson" title prior to receiving the subpoena from eBay in February 2001. (See Supp. Chinni Decl., ¶ 4.) In sum, CDS's evidence shows: (1) it did not take any action expressly *aimed* at California; (2) it did not intend to cause any effect in California when it created the master DVD and artwork for Matarazzo (in New Jersey); and (3) it did not know that its transaction with Matarazzo may affect a California resident's rights. Plaintiff has presented no evidence that contradicts CDS's declarations.

Finally, the fact that CDS at one point intended to out-source the replication of the "Manson" DVD to Infodisc and CDS actually sent the master DVD to Infodisc's Irvine office is insufficient to demonstrate purposeful availment. Even if CDS's conduct in this regard constitutes an intentional act aimed at California,

9

1  CDS's transaction with Infodisc did not cause Plaintiff any harm because the deal
2  fell through when Matarazzo changed his mind and sent his duplication order
3  elsewhere. (See Chinni Decl., ¶¶ 26-28; Supp. Chinni Decl., ¶¶ 2-3 & Ex. A;
4  Park Decl., ¶ 3.) That the alleged intentional acts must have "caused harm" or
5  "had an effect" in the forum state is a requirement under the effects test. Because
6  the evidence shows Infodisc never actually performed the duplication services for
7  CDS in connection with Matarazzo's order, jurisdiction cannot be predicated on
8  CDS's contacts with Infodisc over the film "Manson."
9      Accordingly, the Court concludes that Plaintiff has failed to make a prima
10 facie showing of purposeful availment. Therefore, the Court cannot exercise
11 personal jurisdiction over CDS.

### III. DISPOSITION

For all of the foregoing reasons, the Court GRANTS CDS's motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.

DATED: July 31, 2001.

ROBERT J. KELLEHER
United States District Judge