THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

FILED
CLERK, U.S. DISTRICT COURT

SEP - 4 2001

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S DISTRICT COURT

SEP - 6 2001

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6 __NO__
JS-2/JS-3 _____
Scan Only_____

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HENDRICKSON,<br><br>Plaintiff,<br><br>v.<br><br>EBAY INC., LUCKYBOY ENTERTAINMENT, STEVEN REILLY, and DOES 1 through X,<br><br>Defendants.<br><br>———————————<br>and related cases | Case No. CV 01-0495 RJK (RNBx)<br><br>Consolidated with Case Nos. CV 01-3412 RJK and CV 01-3412 RJK<br><br>**ORDER GRANTING DEFENDANTS EBAY INC., MARGARET C. WHITMAN AND MICHAEL RICHTER'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This case involves a matter of first impression in the federal courts: whether one of the "safe harbor" provisions of the Digital Millennium Copyright Act ("DMCA") affords protection to the operator of the popular Internet auction web service, www.ebay.com, when a copyright owner seeks to hold the operator secondarily liable for copyright infringement by its sellers. On August 20, 2001, the Court heard Defendants eBay, Inc. ("eBay"), Margaret Whitman and Michael Richter's (collectively, the "eBay Defendants") motion for summary judgment on the copyright and trademark claims in the consolidated <u>Hendrickson v. eBay, Inc.</u>



Docketed
Copies / NTC Sent
__N__ JS - 5 / JS - 6
_____ JS - 2 / JS - 3
_____ CLSD

SEP - 6 2001

1  et al. cases.  After the hearing, the Court took the motion under submission.   After

2  considering the papers submitted by the parties, the case file and oral argument,

3  the Court hereby GRANTS the motion.

## I. FACTUAL BACKGROUND

4

5      eBay provides an Internet website service where over 25 million buyers and

6  sellers of consumer goods and services have come together to buy and sell items

7  through either an auction or a fixed-price format.  Pursuant to their agreement with

8  eBay, users set up user IDs or "screen names" to conduct business on eBay's

9  website in a semi-anonymous fashion.[1]  Buyers and sellers reveal their real

10  identities to each other in private communications to complete sales transactions.

11      eBay's website allows sellers to post "listings" (or advertisements)

12  containing descriptions of items they wish to offer for sale; and it allows buyers to

13  bid for items they wish to buy.  People looking to buy items can either browse

14  through eBay's 4,700 categories of goods and services or search for items by

15  typing words into eBay's search engine.  Every day, eBay users place on average

16  over one million new listings on eBay's website.  At any given time, there are over

17  six million listings on the website.[2]

18

19

20      [1]     This is akin to what users of CB radios do when they give themselves
a handle that identifies themselves over the radio waves.  Some eBay user IDs

21  referenced in the records of this case include "emailtales" and

22  "luckyboyentertainment," and "vidjointyc."

23      [2]     In this case, eBay repeatedly characterizes its website as merely an

24  online venue that publishes "electronic classified ads."  (See, e.g., Motion at 3.)
However, eBay's description grossly oversimplifies the nature of eBay's business.

25  A review of eBay's website shows eBay operates far more than a sophisticated

26  online classified service.  (To the extent some of the descriptions about eBay's
website are not in the record, the Court takes judicial notice of www.eBay.com

27  and the information contained therein pursuant to Federal Rule of Evidence 201.)

28  Indeed, eBay's website is known first and foremost as an Internet *auction* website.

1    On or about December 20, 2000, eBay received a "cease and desist" letter

2    from <u>pro se</u> Plaintiff Robert Hendrickson.  The letter advised eBay that Plaintiff

3    dba Tobann International Pictures is the copyright owner of the documentary

4    "Manson."  The letter also stated that pirated copies of "Manson" in digital video

5    disk ("DVD") format were being offered for sale on eBay.  However, the letter did

6    not explain which copies of "Manson" in DVD format were infringing copies; nor

7    did it fully describe Plaintiff's copyright interest.  The letter demanded that eBay

8    cease and desist "from any and all further conduct considered an infringement(s)

9    of [Plaintiff's] right" or else face prosecution "to the fullest extend provided by

10    law."  (<u>See</u> Richter Decl., Ex. C.)

11    Promptly after receiving this letter, eBay sent Plaintiff e-mails asking for

12    more detailed information concerning his copyright and the alleged infringing

13    items.  (<u>See</u> <u>id.</u>, Exs. D-G.)  eBay advised Plaintiff that he has to submit proper

14    notice under the DMCA.   For example, on December 20, 2000,  eBay sent the

15    following e-mail to Plaintiff:

16

17

18

_____

19    <u>See</u>, <u>e.g.</u>, Leslie Walker, *Ebay Goes Off-Line To Train Its Next Block of Dealers*,
Wash. Post, Aug. 9, 2001, *available at* 2001 WL 23185584 ("eBay, the giant

20    Internet auction house"); Pradnya Joshi & Charles V. Zehren, *Bidders' Remorse*

21    *Online Auctions Now No. 1 Source of Internet Fraud*, Newsday, Aug. 30, 2000,
*available at* 2000 WL 10031214 ("eBay, the world's largest online auction

22    service").  eBay's own website describes itself as "the world's largest online

23    marketplace."  <u>See</u> "Overview" page, *at*

24    http://pages.ebay.com/community/aboutebay/overview/index.html.  eBay "enables
trade on a local, national and international basis" and "features a variety of . . .

25    sites, categories and services that aim to provide users with the necessary tools for

26    efficient online trading in the auction-style and fixed price formats."  <u>Id.</u>  eBay's
Internet business features elements of both traditional swap meets -- where sellers

27    pay for use of space to display their goods -- and traditional auction houses --

28    where goods are sold via the highest bid process.

1
2
3
4
5

> [R]ecognizing that some posted items may infringe certain intellectual property rights, we have set up specific procedures which enable verified rights owners to identify and request removal of allegedly infringing auction listings. These procedures are intended to substantially comply with the requirements of the [DMCA], 17 U.S.C. section 512. Click on the following link to access the [DMCA].

6
7
8
9
10
11
12
13

(Id., Ex. D.) In that e-mail, eBay also encouraged Plaintiff to join its Verified Rights Owner ("VeRO") program, by submitting eBay's Notice of Infringement form.[3]  As eBay explained, some of the benefits of the VeRO program include, among other things: (1) access to a customer support group dedicated to servicing the VeRO participants; (2) dedicated priority email queues for reporting alleged infringing activities; and (3) ability to use a special feature called "Personal Shopper," which allows users to conduct automatic searches for potentially infringing item. (Id., Ex. D.)

14
15

On December 28, 2000, Defendant Richter, eBay's Intellectual Property Counsel, followed up with another e-mail:

16
17
18
19
20
21
22

> We have tried to contact you numerous times concerning your letter dated December 14, 2000. [¶ ] We would like to assist you in removing items listed by third parties on our site which you claim infringe your rights. However, in order to do so, we would need proper notice under the [DMCA]. Specifically, we would need you to, among other things, identify the exact items[4] which you believe infringe your rights. In addition, we would need a statement from you, under penalty of perjury, that you own (or are the agent of the owner) the copyrights in the documentary. As you can understand, a statement that we 'immediately CEASE and DESIST from any and all further conduct considered an infringement(s) of my right granted under Copyright and other laws of the land' gives us no indication of what your rights are, and gives us no indication as to which items infringe such rights.

23
24

(Id., Ex. G.) Plaintiff refused to join eBay's VeRO program and refused to fill out

25
26

[3]  eBay's Notice of Infringement form quotes the notification provision of the DMCA, as set forth in 17 U.S.C. § 512(c)(3)(A). (See Richter Decl., Ex. B.)

27
28

[4]  Each listing on eBay's website has its own item number.

4

1 eBay's Notice of Infringement form.[5]  Before filing suit, Plaintiff never provided

2 eBay the specific item numbers that it sought.

## II. PROCEDURAL BACKGROUND

4     On January 17, 2001, Plaintiff filed the first of three lawsuits against eBay.

5 In CV 01-0495 ("Case No. 1") Plaintiff sued eBay and two eBay sellers, asserting

6 a claim for copyright infringement.  The Complaint in Case No. 1 alleges, among

7 other things, that eBay is liable for the sale of unauthorized copies of the film

8 "Manson" by users on eBay's website.

9     On February 12, 2001, Plaintiff filed the second lawsuit.  In CV 01-1371

10 ("Case No. 2"), Plaintiff sued eBay, David Durham (another third party seller) and

11 Margaret C. Whitman ("Whitman"), eBay's President and CEO.  In this case,

12 Plaintiff alleges that eBay and Whitman are liable for copyright infringement

13 because they allowed Defendant Durham to sell unauthorized copies of the film

14 "Manson" on or after January 17, 2001, the date Plaintiff filed Case No. 1.

15     On April 13, 2001, Plaintiff filed his third lawsuit against eBay.  In CV 01-

16 3412 ("Case No. 3"), Plaintiff added several other defendants, including eBay's

17 Senior Intellectual Property Counsel, Michael Richter ("Richter").  Plaintiff

18 alleges, among other things, that eBay and Richter are liable for copyright

---

20     [5]    In his response to eBay's First Set of Requests for Admissions,

21 Plaintiff explained why he refused to join the VeRO program:

22     Knowing that EBAY's so called VeRO program is nothing more than

23     a wickedly concealed scheme to defraud unknowledgeable

24     proprietors of Copyrights, out of their LAWFUL rights, Plaintiff

    refuses to join in, become a member of, participate in, act in concert

25     with, be associated with, lend his name to, or in any way, be a part of

26     a scheme intended to deprive anyone of their hard earned LAWFUL

27     rights.

28 (Richter Decl., Ex. P at 2.)

1   infringement because they wrongfully continued to allow the sale of unauthorized

2   copies of the film "Manson" by eBay users after February 25, 2001, the date

3   Plaintiff commenced Case No. 2.   In addition, Plaintiff alleges a Lanham Act

4   claim and a state claim for tortious interference with prospective economic

5   advantage.

6           On April 30, 2001, the Court denied Plaintiff's motion for preliminary

7   injunction in Case No. 1.  On the same day, the Court granted eBay's motion to

8   consolidate the three actions for all purposes.  On July 2, 2001, the Court issued an

9   order granting, in part, the eBay Defendants' first motion for summary judgment.

10   The Court denied the eBay Defendants' motion for summary judgment on the

11   copyright claims without prejudice to its refiling.  However, the Court granted

12   eBay and Richter's motion for summary adjudication of the application of the

13   Lanham Act's "innocent infringer" provision.  The Court also granted the motion

14   for summary judgment on Plaintiff's state claim on the ground that it is preempted

15   by the Copyright Act.

16           On July 27, 2001, the eBay Defendants filed the pending motion for

17   summary judgment.   Plaintiff filed his opposition on August 6, 2001 and the eBay

18   Defendants filed their reply on August 13, 2001.

19                     **III. DISCUSSION**

20   **A.   Standard**

21           Summary judgment is proper if "the pleadings, depositions, answers to

22   interrogatories, and admissions on file, together with the affidavits, if any, show

23   that there is no genuine issue as to any material fact and that the moving party is

24   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material

25   only if it is relevant to a claim or defense and its existence might affect the suit's

26   outcome. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d.

27   626, 630 (9th Cir. 1987).  A court may not, on a motion for summary judgment,

28   evaluate the credibility of the evidence submitted by the parties. See Leslie v.

1   Grupo ICA, 198 F.3d 1152, 1157-59 (9th Cir. 1999).

2     The moving party bears the burden of demonstrating the absence of a

3   genuine issue of material fact for trial.  See Anderson v. Liberty Lobby, Inc., 477

4   U.S. 242, 256 (1986).  "[T]he burden on the moving party may be discharged by

5   'showing' — that is, pointing out to the district court — that there is an absence of

6   evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477

7   U.S. 317, 325 (1986); see Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990).

8   To demonstrate that the non-moving party lacks sufficient evidence to entitle it to

9   judgment, the moving party must affirmatively show the absence of such evidence

10   in the record, either by deposition testimony, the inadequacy of documentary

11   evidence or by any other form of admissible evidence.  See Celotex, 477 U.S. at

12   322.  The moving party has no burden to negate or disprove matters on which the

13   opponent will have the burden of proof at trial.  See id. at 325.

14     A non-moving party's allegation that factual disputes persist between the

15   parties will not automatically defeat an otherwise properly supported motion for

16   summary judgment.  See Fed. R. Civ. P. 56(e) (non-moving party "may not rest

17   upon the mere allegations or denials of the adverse party's pleadings, but . . . must

18   set forth specific facts showing that there is a genuine issue for trial.").  "[A] mere

19   'scintilla' of evidence will be insufficient to defeat a properly supported motion

20   for summary judgment; instead, the nonmoving party must introduce some

21   'significant probative evidence tending to support the complaint.'" Fazio v. City

22   and County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997), quoting

23   Anderson, 477 U.S. at 249, 252.  In judging evidence at the summary judgment

24   stage, courts must draw all reasonable inferences in favor of the party against

25   whom summary judgment is sought.  See Matsushita Elec. Indus. Co. v. Zenith

26   Radio Corp., 475 U.S. 574, 587 (1986); Chaffin v. United States, 176 F.3d 1208,

27   1213 (9th Cir. 1999).

28

1   **B.     The Copyright Claims Against eBay**

2       **1.     <u>The Infringing Activity</u>**

3          Plaintiff alleges that eBay participated in and facilitated the unlawful sale

4   and distribution of pirated copies of "Manson" DVDs by providing an online

5   forum, tools and services to the third party sellers.   (<u>See</u> Opp. at 3; <u>see also</u>

6   Complaint in Case No. 1, ¶¶ 18, 20, 21 & 30.)   Plaintiff does not allege that the

7   advertisements that sellers posted on eBay's website violate his copyright in

8   "Manson."   The type of secondary liability that Plaintiff seeks to impose on the

9   eBay Defendants is similar to the type of secondary liability the Ninth Circuit

10   allowed in <u>Fonovisa, Inc. v. Cherry Auction, Inc.</u>, 76 F.3d 259 (9th Cir. 1996).

11   There, the court held that the complaint stated causes of action for vicarious and

12   contributory copyright infringement against the operators of a traditional swap

13   meet for sales of counterfeit recordings by independent vendors.[6]   Thus, the issue

14   raised by Plaintiff's copyright claim is not whether eBay can be held secondarily

15   liable for "third party advertisements." (<u>See</u> Reply at 3.)   Rather, the question is

16   whether eBay can be held secondarily liable for providing the type of selling

17   platform/forum and services that it provided, however limited or automated in

18   nature, to sellers of counterfeit copies of the film "Manson."   Before the Court

19   reaches the merits of that question, the Court must address a preliminary issue:

20

21        —————————————

22          [6]     In April of this year, the Ninth Circuit in <u>A & M Records, Inc. v.</u>
<u>Napster, Inc.</u>, 239 F.3d 1004 (9th Cir. 2001) extended <u>Fontovisa</u> to the Internet

23   context.   Napster operates an Internet service that facilitates the transmission and

24   retention of digital audio files by its users.   The Ninth Circuit affirmed the district
court's conclusion that the plaintiffs – record companies and music publishers --

25   have demonstrated a likelihood of success on the merits of their contributory and

26   vicarious copyright infringement claims against Napster under the standards set
forth in <u>Fontovisa</u>.   The Ninth Circuit declined to reach the question of whether

27   the safe harbor provisions of the DMCA applied, concluding that "this issue will

28   be more fully developed at trial." 239 F.3d at 1025.

1  whether the DMCA shields eBay from liability for copyright infringement.

2      **2.      The DMCA**

3      The DMCA "is designed to facilitate the robust development and world-
4  wide expansion of electronic commerce, communications, research, development,
5  and education." S. Rep. No. 105-190, at 1 (105th Congress, 2d Session 1998).
6  Title II of the DMCA, set forth in 17 U.S.C. § 512, "protects qualifying Internet
7  service providers from liability for all monetary relief for direct, vicarious and
8  contributory infringement." <u>Id.</u> at 20.  "Title II preserves strong incentives for
9  service providers and copyright owners to cooperate to detect and deal with
10 copyright infringements that take place in the digital networked environment." <u>Id.</u>
11 at 40.

12     There is no dispute over whether eBay is an Internet "service provider"
13 within the meaning of Section 512. eBay clearly meets the DMCA's broad
14 definition of online "service provider."  <u>See</u> 17 U.S.C. § 512(k)(1)(B) ("the term
15 'service provider' means a provider of online services or network access, or the
16 operator of facilities therefor").

17     To qualify for one of the safe harbor provisions, the service provider's
18 activities at issue must involve functions described in one of four separate
19 categories set forth in subsections (a) through (d) of Section 512. <u>See</u> 17 U.S.C. §
20 512(n). eBay argues that it qualifies for protection under the third and fourth
21 categories. Because the record establishes that eBay qualifies for protection under
22 Section 512(c), the Court need not address the applicability of Section 512(d).

23     **3.      Safe Harbor Under Section 512(c)**

24     Subsection (c) limits liability for "infringement of copyright by reason of
25 the <u>storage</u> at the direction of a user of <u>material</u> that resides on a system or
26 network controlled or operated by or for the service provider." 17 U.S.C. §
27 512(c) (emphasis added).  This section applies where a plaintiff seeks to hold an
28 Internet service provider responsible for either (1) infringing "material" stored and

1    displayed on the service provider's website or (2) infringing "activity using the

2    material on the [service provider's computer] system." 17 U.S.C. §

3    512(c)(1)(A)(i).  Here, because the focus of the copyright claims against eBay

4    concerns infringing activity – the sale and distribution of pirated copies of

5    "Manson" – using "materials" posted eBay's website, Section 512(c) would

6    provide eBay a safe harbor from liability if eBay meets the conditions set forth

7    therein.

8         Three requirements for safe harbor are delineated in Section 512(c)(1).

9    First, the service provider must demonstrate that it does not have actual

10   knowledge that an activity using the material stored on its website is infringing or

11   an awareness of "facts or circumstances from which infringing activity is

12   apparent." 17 U.S.C. § 512(c)(1)(A)(i)-(ii).  Alternatively, the service provider

13   must show that it expeditiously removed or disabled access to the problematic

14   material upon obtaining knowledge or awareness of infringing activity. See 17

15   U.S.C. § 512(c)(1)(A)(iii).  Second, the service provider must show it "does not

16   receive a financial benefit directly attributable to the infringing activity" if the

17   service provider has "the right and ability to control such activity." 17 U.S.C. §

18   512(c)(1)(B).  Third, the service provider must show that it responded

19   expeditiously to remove the material that is the subject of infringing activity upon

20   receiving notification of the claimed infringement in the manner described in

21   Section 512(c)(3). 17 U.S.C. § 512(c)(1)(C).

22        a.    **The Third Prong of the Test:  Notification of the Alleged**

23              **Infringing Activity**

24        Under the third prong of the test, the service provider's duty to act is

25   triggered only upon receipt of proper notice. See id. Section 512(c)(3) sets forth

26   the required elements for proper notification by copyright holders.  First, rights

27   holders must provide written notification to the service provider's designated

28   agent. See 17 U.S.C. § 512(c)(3).  In addition, the notification must include

1    "substantially" the following six elements:

2        (1)    a physical or electronic signature of a person authorized to act on

3        behalf of the owner of an exclusive right that is allegedly infringed;

4        (2)    identification of the copyrighted work claimed to have been

5        infringed;

6        (3)    identification of the material that is claimed to be infringing or to be

7        the subject of infringing activity and that is to be removed or access to

8        which is to be disabled, and information reasonably sufficient to permit the

9        service provider to locate the material;

10       (4)    information reasonably sufficient to permit the service provider to

11       contact the complaining party;

12       (5)    a statement that the complaining party has a good faith belief

13       that use of the material in the manner complained of is not authorized

14       by the copyright owner, its agent, or the law; and

15       (6)    a statement that the information in the notification is accurate,

16       and under penalty of perjury, that the complaining party is authorized

17       to act on behalf of the copyright owner.

18   Id.

19        Preliminary, the Court rejects Plaintiff's argument that he need not submit

20   written notification in the manner described above (i.e., provide the notification

21   referenced in the third prong of the safe harbor test) as long as other facts show the

22   service provider received actual or constructive knowledge of infringing activity.

23   (See Opp. at 8.)   Plaintiff refers to the first prong of the safe harbor test set forth

24   in Section 512(c)(1)(ii) and (iii) in support of this argument.   Plaintiff's argument

25   has no merit.

26        The DMCA expressly provides that if the copyright holder's attempted

27   notification fails to "comply substantially" with the elements of notification

28   described in subsection (c)(3), that notification "shall not be considered" when

1  evaluating whether the service provider had actual or constructive knowledge of

2  the infringing activity under the first prong set forth in Section 512(c)(1). 17

3  U.S.C. § 512(c)(3)(B)(i) (emphasis added). Here, Plaintiff does not dispute that he

4  has not strictly complied with Section 512(c)(3). (<u>See</u>, <u>e.g.</u>, Opp. at 8-9.) The

5  question is whether Plaintiff's <u>imperfect</u> attempts to give notice satisfy Section

6  512(c)(3)'s "substantial[]" compliance requirement.

       **(1)    <u>No Statement Attesting to Good Faith And Accuracy</u>**

             **<u>of Claim</u>**

9       Plaintiff's pre-suit "cease and desist" letter and e-mails to eBay do not

10  include several of the key elements for proper notice required by Section

11  513(c)(3). (<u>See</u> Richter Decl., Exs. C, E, F, H & I.) None of these writings

12  includes a written statement under "penalty of perjury" attesting to the fact "that

13  the information in the notification is accurate . . . [and] the complaining party is

14  authorized to act on behalf of the owner" of the copyright at issue. 17 U.S.C. §

15  512(c)(3)(A)(vi). Additionally, none of these writings includes a written

16  statement that Plaintiff "has a good faith belief that use of the material in the

17  manner complained of is not authorized." 17 U.S.C. § 512(c)(3)(A)(v). The

18  complete failure to include these key elements in his written communications to

19  eBay, even after eBay specifically asked for these items, renders Plaintiff's

20  notification of claimed infringement deficient under Section 512(c)(3).

       **(2)    <u>Inadequate Identification of Material Claimed to be</u>**

             **<u>the Subject of Infringing Activity</u>**

23       Moreover, the record shows that Plaintiff failed to comply substantially

24  with the requirement that he provide eBay with sufficient information to identify

25  the various listings that purportedly offered pirated copies of "Manson" for sale.

26  <u>See</u> 17 U.S.C. § 512(c)(3)(A)(iii). It is true that Plaintiff has informed eBay in

27  writing that counterfeit copies of "Manson" were being offered and sold on eBay's

28  website. However, when eBay requested that Plaintiff identify the alleged

1   problematic listings by the eBay item numbers, Plaintiff refused.  (See, e.g., Kim

2   Decl., Ex. P [Plaintiff's Response to First Request for Admissions], RFA Nos. 21

3   and 22.)  Plaintiff contends that it is not his job to do so once he has notified eBay

4   of the existence of infringing activity by eBay sellers.   (See id. at 3.)

5          The Court recognizes that there may be instances where a copyright holder

6   need not provide eBay with specific item numbers to satisfy the identification

7   requirement.   For example, if a movie studio advised eBay that all listings

8   offering to sell a new movie (e.g., "Planet X,") that has not yet been released in

9   VHS or DVD format are unlawful, eBay could easily search its website using the

10   title "Planet X" and identify the offensive listings.  However, the record in this

11   case indicates that specific item numbers were necessary to enable eBay to

12   identify problematic listings.

13          Plaintiff has never explained what distinguishes an authorized copy of

14   "Manson" from an unauthorized copy.  Initially, in his December 2000 cease and

15   desist letter, Plaintiff only complained about pirated copies of "Manson" in DVD

16   format.  (See Richter Decl., Ex. C.)  Plaintiff did not inform eBay that all DVD

17   copies were unauthorized copies; he merely asserted that pirated copies of

18   "Manson" DVDs were being sold on eBay.   (See id.)  Subsequently, Plaintiff sent

19   an e-mail to eBay complaining about a seller who was selling a pirated copy of

20   "Manson" in VHS format.  (See id. at ¶ 24 & Ex. I.)[7]  But Plaintiff's e-mail did not

21

22          [7]       On January 4, 2001, Plaintiff sent eBay an e-mail complaining about

23   a seller named "vidjointnyc@hotmail.com" who was "still selling pirated copies

24   of my film MANSON in YOUR 'Thieves Market'."  (See Richter Decl., Ex. I.)
     After receiving Plaintiff's e-mail, eBay discovered that this seller had one active

25   listing on eBay's website; that listing offered "Charles Manson Family Footage

26   VHS New!!"  (See id. at ¶ 24 & Ex. J.)  Nowhere in the listing did the seller state
     he was offering a copy of a film entitled "Manson."  (See id.)  eBay removed the

27   listing at the risk of exposing itself to a lawsuit from the seller even though up

28   until that time Plaintiff had only complained about pirated DVDs, the seller was

1   identify the basis for his claim that the seller was selling a pirated copy of

2   "Manson."

3        During oral argument, Plaintiff stated that he notified eBay that <u>all</u> copies of

4   "Manson" in DVD format are unauthorized.  However, the undisputed record in

5   this case shows that Plaintiff did not provide this notification <u>in writing</u> before

6   filing suit.[8]  A copyright holder must comply with the "written communication"

7   requirement.  <u>See</u> 17 U.S.C. § 512(3)(A).  The writing requirement is not one of

8   the elements listed under the substantial compliance category.  <u>See id.</u>  Therefore,

9   the Court disregards all evidence that purports to show Plaintiff gave notice that

10   all DVDs violate his copyright in "Manson."[9]

11        With respect to "Manson" VHS tapes, Plaintiff has admitted that authorized

12   copies of "Manson" have been released in VHS format.  (<u>See</u> Hendrickson Decl., ¶

---

14   clearly offering a VHS tape for sale, and the listing made no reference to the title

15   "Manson."  (<u>See id.</u> at ¶ 24 & n.1.)

16        [8]   Plaintiff contends that during a January 2001 telephone conversation

17   (shortly after he commenced suit), he told Richter that all copies of "Manson" in

18   DVD format infringe on his copyright because he has never authorized the release
of this movie on DVD.  (Hendrickson Decl., ¶ 11.)  There is a dispute in the record

19   as to when Plaintiff orally advised eBay that <u>all</u> copies of "Manson" in DVD

20   format were unauthorized.  (<u>Compare id. with</u> Kim Decl., ¶ 7.)  However, the
dispute over the dates is immaterial.  It is undisputed that Plaintiff has never

21   provided this information in a written communication to eBay as required by

22   Section 512(c)(3).

23        [9]   The Court notes that even though Plaintiff failed to submit proper

24   notice of his claim that all "Manson" in DVD format are unauthorized, since

25   March 2001, eBay has voluntarily searched its website on a daily basis for all
copies of "Manson" in DVD format, removed all such listings and suspended

26   repeat offenders.  (<u>See</u> April 13, 2001 Declaration of Michael Richter filed in

27   support of the eBay Defendants' Opp. to Motion for Prelim. Injunction, ¶ 24.)
eBay has represented to the Court that it plans to continue to take such action

28   during the pendency of this lawsuit.  (<u>See id.</u>)

11 ("certain VHS tapes were infringing[] because some of those had been authorized"; Kim Decl., ¶ 7.)  Therefore, authorized copies of "Manson" in VHS format are available in the marketplace.  Plaintiff has offered no explanation to eBay or this Court as to how eBay could determine which "Manson" VHS tapes being offered for sale are unauthorized copies.[10]

Plaintiff raises two more arguments in support of his claim that he need not provide eBay with specific item numbers to satisfy the "identification" requirement under the DMCA.  Neither argument has merit.

First, Plaintiff points out that he has sent an e-mail to eBay identifying the eBay user IDs of four alleged infringers.   Plaintiff asserts that the identification of user names provides eBay with sufficient information to locate the listings that offer pirated copies of "Manson."  (See Hendrickson Decl, ¶ 9(b).)   The e-mail in question, dated December 21, 2000,  does not satisfy the DMCA's identification requirement.  (See id., Ex. G.)[11]   The e-mail does not identify the listings that are

---

[10]    Plaintiff states that during a January 2001 telephone conversation, he informed Richter that all VHS tapes labeled "new" had to be counterfeit. (Hendrickson Decl., ¶ 11.)   Because Plaintiff did not provide this information to eBay in writing, the Court need not consider the deficient notice.   Nevertheless, the Court notes that Plaintiff's contention that all "new" VHS tapes must be counterfeit is wholly unsubstantiated.  Perhaps Plaintiff has not authorized the release of new VHS copies in recent years.  However, it is certainly possible that a seller advertises a "Manson" VHS tape as "new" because the tape remains sealed in its original package.  Such a VHS tape could be an authorized copy.

[11]    The e-mail states:
Hi, Kai, this is Robert Hendrickson, the copyright owner of the motion picture MANSON.  Because of the copyright infringement activity conducted by the following Ebay User Names: emailtales, luckyboyentertainment, stoonod and vidjointnyc via your website, please email me any and ALL information you have on these criminals.  Thanks.
(Hendrickson Decl, Ex. G.)

1    claimed to be the subject of infringing activity; it does not even describe the

2    infringing activity.  Moreover, it contains none of the other requisite elements of a

3    proper notification under Section 512(c)(3)(A), e.g., a statement attesting to the

4    good faith and accuracy of the allegations.

5          Second, Plaintiff contends that eBay can identify listings offering infringing

6    copies of "Manson" for sale without particular item numbers because eBay

7    previously removed two listings even though Plaintiff did not provide the item

8    numbers.  (See Hendrickson Decl., ¶¶ 7 & 10.)  The first listing, item number

9    1401275408, was the one that offered a VHS for sale by the seller

10   "vidjointnyc@hotmail.com."  (See id.; Richter Decl., Ex. J.)  As discussed above,

11   eBay found and removed this listing after Plaintiff sent an email complaining

12   about this seller; this seller only had one active advertisement at the time.  (See

13   Richter Decl., ¶ 24.)  At the time, eBay had no evidence that seller

14   vidjointnyc@hotmail.com was engaging in infringing activity; eBay simply

15   removed the listing out of an abundance of caution.  (See id.)  With respect to the

16   second listing, item number 525181519, the record is not clear as to why eBay

17   removed the listing.  Plaintiff's only "evidence" concerning this listing is a single

18   page printout from some unidentified Internet message board that contains a post

19   submitted by an unknown user.  (See Hendrickson Decl., ¶ 10 & Ex. J.)  Plaintiff's

20   evidence is inadmissable and his conclusion is unsubstantiated.

21         In sum, the record in this case shows that proper identification under

22   Section 512(c)(3)(A)(iii) should include the specific item numbers of the listings

23   that are allegedly offering pirated copies of "Manson" for sale.  It is undisputed

24   that Plaintiff refused to provide specific item numbers of problematic listings

25   before filing suit.[12]  Accordingly, the Court holds that Plaintiff failed to comply

26

27         [12]     Plaintiff provided eBay a list of specific eBay item numbers of

28   allegedly problematic listings on one occasion – he identified them in his March 5,

1  substantially with Section 512(c)(3)'s identification requirement.[13]

2         Consequently, eBay did not have a duty to act under the third prong of the

3  safe harbor test.  See 17 U.S.C. § 512(c)(1)(C).   Thus, if eBay establishes that it

4  meets the remaining prongs of the safe harbor test, eBay would be entitled to

5  judgment in its favor on the copyright claims.

6

7  _____

8  2001 written response to the eBay Defendants' request for production of

9  documents.   This discovery response pre-dates the filing of Case No. 3.  To the

10 extent Plaintiff contends this discovery response constitutes sufficient notice of

   claims alleged in Case No. 3, the Court rejects Plaintiff's contention.  The

11 response was not under oath, it does not attest to a good faith belief that the items

12 identified in the list are pirated copies of "Manson," and it does not attest to the

   accuracy of the allegations.   Such a writing, without more, does not constitute

13 adequate notice under Section 512(c)(3)(A).

14
         [13]     In light of the above ruling, the Court need not address whether

15 Plaintiff's notification satisfied the other elements set forth in Section

16 512(c)(3)(A), e.g., whether Plaintiff notified eBay's "designated agent."

   However, during the hearing on this motion, Plaintiff raised a new argument

17 involving the "designated agent" requirement.  Plaintiff argued, for the first time,

18 that eBay should not be able to avail itself of the protections of the DMCA

19 because its website failed to identify a "designated agent" until recently.  Based on

   the comments made during oral argument, the Court surmises that Plaintiff's

20 contention is premised on the belief that eBay cannot simply designate "VeRO

21 Department" for the submission of notices of infringement; rather, eBay must

   identify on its website the name of an individual "agent."   Because Plaintiff failed

22 to raise this argument in his papers and failed to submit evidence in support of this

23 argument, the Court declines to consider it.   Nevertheless, the Court notes that the

24 record shows that at all relevant times, eBay advised Plaintiff that the notices of

   infringement should be submitted to the attention of eBay's "VeRO Program."  In

25 its emails to Plaintiff, eBay provided a hypertext link to the notice of infringement

26 form on eBay's website.  That form identifies the address and fax number for the

   VeRO Program.   Nothing in the DMCA mandates that service providers must

27 designate the name of a person as opposed to a specialized department to receive

28 notifications of claimed infringement.  See 17 U.S.C. § 512(c)(2).

17

b.   **The First Prong of the Test:  Actual or Constructive Knowledge**

Under the DMCA, a notification from a copyright owner that fails to comply substantially with Sections 512(c)(3)(A)(ii), (iii) or (iv) "shall not be considered under [the first prong of the safe harbor test] in determining whether a service provider has actual knowledge or is aware of the facts or circumstances from which infringing activity is apparent." See 17 U.S.C. § 512(c)(3)(B)(i) & (ii) (emphasis added).  As discussed above, Plaintiff's written notifications do not comply substantially with Section (c)(3)(A)(ii)'s adequate identification requirement.  Therefore, the Court does not consider those notices when evaluating the actual or constructive knowledge prong of the safe harbor test.

eBay's evidence shows that prior to this lawsuit, it did not have actual or constructive knowledge that particular listings were being used by particular sellers to sell pirated copies of "Manson."  The limited information that Plaintiff provided to eBay cannot, as a matter of law, establish actual or constructive knowledge that particular listings were involved in infringing activity. Accordingly, the Court holds that eBay has satisfied the first prong of the safe harbor test under Section 512(c).  See 17 U.S.C. § 512(c)(1)(A).

c.   **The Second Prong of the Test:  Right and Ability to Control Infringing Activity**

To satisfy the second prong of the test, eBay must show that it "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B) (emphasis added).  Because the undisputed facts establish that eBay does not have the right and ability to control the infringing activity, the Court need not evaluate the financial benefit element of this prong.

Plaintiff's only argument on the "ability to control" issue centers on eBay's ability to remove infringing listings (1) after it receives proper notification of

1  infringing activity and (2) upon detecting an "apparent" infringement on its own.[14]
2  (See Opp. at 7.)   Plaintiff argues that the record shows eBay has the right and
3  ability to control the infringing activity because it has removed the listings for the
4  sale of various items in the past, including the listings offering pirated copies of
5  "Manson" (in response to Plaintiff's complaints).   Plaintiff's argument has no
6  merit.

7      First, the "right and ability to control" the infringing activity, as the concept
8  is used in the DMCA, cannot simply mean the ability of a service provider to
9  remove or block access to materials posted on its website or stored in its system.
10  To hold otherwise would defeat the purpose of the DMCA and render the statute
11  internally inconsistent.   The DMCA specifically requires a service provider to
12  remove or block access to materials posted on its system when it receives notice of
13  claimed infringement. See 17 U.S.C. §§ 512(c)(1)(C).   The DMCA also provides
14  that the limitations on liability only apply to a service provider that has "adopted
15  and reasonably implemented . . . a policy that provides for the termination in
16  appropriate circumstances of [users] of the service provider's system or network
17  who are repeat infringers." See 17 U.S.C. § 512(i)(1)(A).   Congress could not
18  have intended for courts to hold that a service provider loses immunity under the
19  safe harbor provision of the DMCA because it engages in acts that are specifically
20  required by the DMCA.

21

22      [14]    In December 2000, eBay voluntarily began searching its website
23  daily, on a limited basis, for listings that appear on their faces to be infringing --
24  "apparent" infringements. (See Richter Decl., ¶ 13.) eBay conducts these
    searches using generic key words such as "bootleg," "pirated," "counterfeit," and
25  "taped off TV" that may indicate potentially infringing activity. If eBay's staff
26  determines that a seller appears to be offering infringing goods for sale, eBay
    would remove the listing from its website, notify the seller that the listing has been
27  removed, refund the fees paid for that listing and review the seller's account for
28  possible suspension. (See id.)

1   Second, eBay's voluntary practice of engaging in limited monitoring of its

2   website for "apparent" infringements under the VeRO program cannot, in and of

3   itself, lead the Court to conclude that eBay has the right and ability to control

4   infringing activity within the meaning of the DMCA.  The legislative history

5   shows that Congress did not intend for companies such as eBay to be penalized

6   when they engage in voluntary efforts to combat piracy over the Internet:

7       This legislation is not intended to discourage the service provider

8       from monitoring its service for infringing material.  Courts should not

9       conclude that the service provider loses eligibility for limitations on

10      liability under section 512 solely because it engaged in a monitoring

11      program.

12  House Report 105-796 at 73 (Oct. 8, 1998).

13  Moreover, as Plaintiff acknowledges, the infringing activities at issue are

14  the sale and distribution of pirated copies of "Manson" by various eBay sellers –

15  which are consummated "offline" – and not the display of any infringing material

16  on eBay's website.  (Reply at 3.)  Viewing the term "infringing activity" in this

17  context, the undisputed facts demonstrate that eBay does not have the right and

18  ability to control such activity.

19  Unlike a traditional auction house, eBay is not actively involved in the

20  listing, bidding, sale and delivery of any item offered for sale on its website.

21  eBay's evidence shows that it does not have any control over the allegedly

22  infringing items – the pirated films.  (See Richter Decl., ¶¶ 7, 33 & 34.)  The

23  evidence also shows that eBay never has possession of, or opportunity to inspect,

24  such items because such items are only in the possession of the seller.  (See id.)

25  When auctions end, eBay's system automatically sends an email to the high bidder

26  and the seller identifying each other as such.  (See id. at ¶ 7.)  After that, all

27  arrangements to consummate the transaction are made directly between the buyer

28  and seller.  (See id.)  eBay has no involvement in the final exchange and generally

20

1   has no knowledge whether a sale is actually completed (<u>i.e.</u>, whether payment
2   exchanges hands and the goods are delivered).  (<u>See id.</u>)  If an item is sold, it
3   passes directly from the seller to the buyer without eBay's involvement.  (<u>See id.</u>)
4   eBay makes money through the collection of an "insertion fee" for each listing
5   and a "final value fee" based on a percentage of the highest bid amount at the end
6   of the auction.  (<u>See id.</u> at ¶ 8.)

7        Plaintiff offers no evidence that establishes the existence of a triable issue of
8   fact on the "ability to control the infringing activity" issue.  Accordingly, the
9   Court hold that the record shows that eBay does not have the right and ability to
10  control the infringing activity at issue.

11       Because eBay has established that it meets the test for safe harbor under
12  Section 512(c), eBay is entitled to summary judgment in its favor on the copyright
13  claims.

14  **C.    Plaintiff's Copyright Claims Against Richter and Whitman**

15       The copyright claims against eBay's employees, Richter and Whitman, are
16  based solely on alleged acts and omissions committed in the course and scope of
17  their employment with eBay.  Consequently, eBay's immunity from liability for
18  copyright infringement should also extend to Defendants Richter and Whitman.
19  To hold that the safe harbor provision of the DMCA protects the company but not
20  its employees for the same alleged bad acts would produce an absurd result.
21  Congress could not have intended to shift the target of infringement actions from
22  the Internet service providers to their employees when it enacted the safe harbor
23  provisions.  Accordingly, the Court holds that Richter and Whitman are also
24  entitled to summary judgment in their favor.

25  **D.    Plaintiff's Lanham Act Claim Against eBay and Richter**

26       In Case No. 3, Plaintiff alleges that eBay, Richter and over a dozen third
27  party sellers violated his rights under the Lanham Act, 15 U.S.C. § 1125.  This
28  claim is premised on a "printer-publisher" liability for trademark/trade dress

infringement.   The Court recently held that eBay and Defendant Richter would be "innocent infringers" within the meaning of 15 U.S.C. § 1114(2) even if Plaintiff were to establish infringement.   See July 3, 2001 Order at 17.  The Court reached this ruling in part because the undisputed facts showed that eBay had no knowledge of a potential trade dress violation before Plaintiff filed suit.  See id. Because eBay and Richter are "innocent infringers," Plaintiff's remedy is limited to an injunction against the future publication or transmission of the infringing advertisements on eBay's website.  See 15 U.S.C. § 1114(2)(B).

Now, eBay argues that Plaintiff's need for such an injunction has been obviated because eBay has stopped running all the advertisements claimed to be infringing and it has no intention of running the identified advertisements in the future.  See, e.g., Brown v. Armstrong, 957 F. Supp. 1293, 1303 n.8 (D. Mass 1997) (Lanham Act false advertisement claim for injunctive relief based on false statements in an infomercial was moot where the infomercial had stopped running and there were no plans to air it in the future); Stephen W. Boney Servs. Inc., 127 F.3d 821, 827 (9th Cir. 1997) (grocery store operator's claim for declaratory judgment that it had priority in use of trade name was moot where the competitor had announced that it would rename its stores).  eBay's evidence shows that it has removed from its website the allegedly false and misleading advertisements identified by Plaintiff.  (See Richter Decl., ¶¶ 38-44.)  Plaintiff has offered no evidence that contradicts this showing.

Rather, Plaintiff argues that he is entitled to an injunction that restrains eBay "from any further displaying and or transmitting of any false and or misleading advertisements in connection with the sale/distribution of 'counterfeit' MANSON DVD's via its websites." (Opp. at 11 (emphasis added).)  In short, Plaintiff seeks an injunction enjoining any and all false and/or misleading advertisements that may be posted on eBay's website by users in the future,

//

1  regardless of whether they are the basis of this lawsuit and whether they have been

2  identified by Plaintiff.

3      No authority supports Plaintiff's position.  Indeed, such an injunction would

4  effectively require eBay to monitor the millions of new advertisements posted on

5  its website each day and determine, on its own, which of those advertisements

6  infringe Plaintiff's Lanham Act rights.  As the Court previously noted, "no law

7  currently imposes an affirmative duty on companies such as eBay to engage in

8  such monitoring."  July 3, 2001 Order at 15.  Further, the Court's recent "innocent

9  infringer" ruling was premised on the Court's determination that eBay has no

10  affirmative duty to monitor its own website for potential trade dress violation and

11  Plaintiff had failed to put eBay on notice that particular advertisements violated

12  his Lanham Act rights before filing suit.  The Court holds that Plaintiff is not

13  entitled to the remedy that he seeks.  The undisputed facts show that Plaintiff's

14  Lanham Act claim for injunctive relief is moot.

15  ## IV.  DISPOSITION

16      Because no triable issues of material fact exist with respect to the eBay

17  Defendants' entitlement to immunity under the DMCA, the Court hereby

18  GRANTS the eBay Defendants' motion for summary judgment on the copyright

19  claims.  Additionally, because the undisputed facts establish that Plaintiff's

20  Lanham Act claim is now moot, the Court hereby GRANTS eBay and Richter's

21  motion for summary judgment on the Lanham Act claim.

22

23

24  IT IS SO ORDERED.

25  DATED:    September 4, 2001

26

27      ROBERT J. KELLEHER
    United States District Judge

28